IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:20-CR-304-P |
| MARY JANE MCINTYRE (01) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
WITHDRAW GUILTY PLEA

The government is opposed to defendant Mary Jane McIntyre's motion, Docket No. 40 (the "Motion") to withdraw her guilty plea, and requests that the Court deny the Motion.   In support hereof, the government respectfully states as follows:

Background and Procedural History

Starting at least as early as October 2019, and continuing through October 2020, the defendant engaged in a conspiracy to distribute methamphetamine and other narcotics through the U.S. mail to dark web customers.   (Presentence Investigation Report (PSR), Docket No. 20 ¶¶ 11-26.)   on October 6, 2020, a one count criminal complaint was filed against the defendant, charging her with Possession with Intent to Distribute a Controlled Substance.   (Docket No. 1.)   On November 4, 2020, a one count indictment was returned alleging the same charge.   (Docket No. 9.)   On November 30, 2020, a superseding information was filed, which included a forfeiture allegation.   (Docket No. 18.)   Pursuant to a written plea agreement, the defendant pled guilty to the superseding information before Magistrate Judge Hal R. Ray, Jr. on December 9, 2020.   (Docket

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  1**

Nos. 24.)   After the Magistrate Judge's colloquy with the defendant, she pled guilty.

Her guilty plea was supported by a factual resume wherein she admitted to the following:

> On or about October 6, 2020, in the Fort Worth Division of the Northern District of Texas, defendant **Mary Jane McIntyre** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

> On or about October 6, 2020, Postal Inspectors and Special Agents with the U.S. Postal Service Office of Inspector General (USPS-OIG) executed a federal search warrant at **McIntyre's** residence on Savannah Club Drive in Arlington, Tarrant County, Texas in connection with an investigation of **McIntyre** and other individuals for distributing narcotics using the U.S. mails. During the execution of the search warrant, Postal Inspectors recovered several vacuum-sealed bags containing bulk quantities of methamphetamine. Along with the methamphetamine, agents recovered quantities of small vacuum-sealed packages marked with 3.5 and 7 in red marker on the exterior of the bag, this is consistent with other narcotics packages recovered during the investigation.   Also found in the residence were USPS shipping supplies including Priority Mail envelopes, Priority Mail Small Flat Rate boxes, manila envelopes, suspected marijuana, blank DVD cases, and rolls of vacuum seal bags. Postal Inspectors also recovered envelopes with approximately $23,000 or more in U.S. currency hid behind several pictures on the walls of the apartment. On prior occasions, **McIntyre** has been captured on Post Office surveillance cameras mailing parcels for her son, who is a known narcotics distributor.

(Docket No. 23.).

In the defendant's plea agreement, the defendant acknowledged that she was

satisfied with her attorney's advice, as follows:

> The defendant has thoroughly reviewed all legal and factual aspects of this case with her lawyer and is fully satisfied with that lawyer's legal representation. The defendant has received from her lawyer explanations satisfactory to her concerning each paragraph of this plea agreement, each of her rights affected by this agreement, and the alternatives available to her other than entering into this agreement. Because she concedes that she is guilty, and after conferring with her

lawyer, the defendant has concluded that it is in her best interest to enter into this plea agreement and all its terms, rather than to proceed to trial in this case.

(Docket No. 24, ¶ 11.)   She twice signed the plea agreement, including executing a separate acknowledgement that she "ha[d] read (or had read to [her]) this Plea Agreement and ha[d] carefully reviewed every part of it with [her] attorney."   (Docket No. 24, pp. 6-7.)   She further acknowledged that she "fully underst[ood] it and voluntarily agree[d] to it."   *Id.*   The defendant's acknowledgement was accompanied by a like assertion from her counsel that he had carefully reviewed the plea agreement with his client, and that he believed her decision to enter the agreement to be informed and voluntary.   *Id.*

On the same day as the defendant's guilty plea, the Magistrate Judge filed a report and recommendation to the Court.   (Docket No. 26.)   The report made the following findings:

1. The defendant, upon advice of counsel, has consented orally and in writing to enter this guilty plea before a magistrate judge subject to final approval and sentencing by the presiding district judge;
2. The defendant fully understands the nature of the charges and penalties;
3. The defendant understands all constitutional and statutory rights and wishes to waive these rights, including the right to a trial by jury and the right to appear before a United States district judge;
4. The defendant's plea is made freely and voluntarily;
5. The defendant is competent to enter this plea of guilty;
6. There is a factual basis for this plea; and
7. The ends of justice are served by acceptance of the defendant's plea of guilty.

The report also advised the defendant that she had fourteen days to make objections to these findings.   *Id.*   On December 29, 2020, the Court accepted the Magistrate Judge's report and recommendations and adjudged the defendant guilty.   (PSR ¶ 10.)

On January 19, 2021, the defendant was interviewed telephonically, in the presence of her attorney, by a U.S. Probation Officer.   (PSR ¶ 32.)   The defendant admitted she mailed drugs, though to the Probation Officer, it "appear[ed] that she [was] minimiz[ing] her involvement in the offense."   (PSR ¶ 34.)   On February 3, 2021, nearly two months after the defendant's guilty plea, the PSR was submitted recommending a Guideline imprisonment range of 210-262 months' imprisonment. (PSR ¶ 74.)   However, by the terms of her plea agreement (should the court accept it) and the statutory limits of the offense of conviction, the defendant can be sentenced to no more than 240 months' imprisonment.   *Id.*   On February 17, 2021, the defendant filed objections to the PSR, arguing first that she deserved a mitigating role adjustment, and second that she should not be held accountable for relevant conduct arising from her and her coconspirators' mailings of thousands of drug packages through the mail.   (PSR Addendum, Docket No. 34.)   On March 9, 2021, the Probation Office rejected the defendant's objections, and supported the PSR as written.   *Id.*   And finally, on April 26, 2021, the defendant filed a motion to withdraw her guilty plea alleging that she is actually innocent, and that she made her plea "believe[ing] that if she shipped narcotics on behalf of her son, even unknowingly, she could be liable for a crime."   (Motion, p. 4.)

## Legal Standard for Withdrawal of Guilty Plea

A district court may grant a motion to withdraw a guilty plea before a defendant is sentenced if the defendant shows a "fair and just reason."   FED.R.CRIM.P. 11(d)(2)(B).

However, there is no absolute right to withdraw a guilty plea, and the defendant bears the burden to establish a "fair and just reason" for withdrawal. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003); *United States v. Grant*, 117 F.3d 788, 789 (5th Cir. 1997). There are seven factors the district court should consider when applying the "fair and just" standard:

> (1) whether the defendant asserted her innocence,
> (2) whether withdrawal would prejudice the government,
> (3) whether the defendant delayed in filing the withdrawal motion,
> (4) whether withdrawal would inconvenience the court,
> (5) whether close assistance of counsel was available,
> (6) whether the plea was knowing and voluntary, and
> (7) whether withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).    In applying these factors, courts are to consider the totality of the circumstances, and "the trial court's decision regarding a withdrawal motion must be accorded 'broad discretion.'"    *Id.* at 344.    "A motion to withdraw a guilty plea is committed to the discretion of the district court and its decision will not be disturbed absent an abuse of discretion." *United States v. Still*, 102 F.3d 118, 123 (5th Cir.1996).    A "district court abuses its discretion if it denies a defendant's motion to withdraw a guilty plea based on an error of law or a clearly erroneous assessment of the evidence."    *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014) (internal quotation marks and citations omitted).

Further, the Fifth Circuit has held that "[a]llowing [a defendant] to withdraw his plea without a fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas." *United States v. Adam*, 296 F.3d 327, 332

(5th Cir. 2002), citing *Grant*, 117 F.3d at 791.   In holding that a guilty plea may not be withdrawn unless the defendant provides a "fair and just reason," the Supreme Court explained that "[a]fter the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea," allowing "the defendant to withdraw his guilty plea simply on a lark . . . would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess."   *United States v. Hyde*, 520 U.S. 670, 677 (1997).

## Argument

The Motion should be denied.   Though the defendant now claims innocence, this is the first time she has done so; her claim is entirely unsupported except by her own self-serving statements; and her request may fairly be construed as a direct response to the disclosure of the PSR, which recommends a guideline imprisonment range of 210-240 months of imprisonment.   The Court will also note that in the Motion, the defendant does not address all of the *Carr* factors set forth in case law, instead limiting her argument to just two out of the seven factors; as is discussed further below, on balance, the factors heavily weigh against the relief requested.   (Motion, pp. 3-4.)

The defendant pled guilty after being informed by the Magistrate Judge of her rights, potential penalties, and that she could not withdraw her plea if she discovered that her sentence could be higher than she expected.   The defendant admitted to the stipulated facts within the factual resume and substantially confirmed these facts when interviewed

by the Probation Officer.   Further, the defendant delayed filing her motion for over four

months after her guilty plea, instead waiting until the eve of sentencing (and her

coconspirator son's sentencing less than a week ago in Case No. 4:20-CR-305-O).   The

lengthy delay weighs against granting the motion.   *See Carr*, 740 F.2d at 344 (the longer

the delay in filing the motion to withdraw, the more substantial the reasons must be to

support the motion).

  The defendant cannot in good faith say that her plea was made involuntarily.   She

had the assistance of an attorney throughout her proceedings.   The Magistrate Judge

carefully admonished the defendant as to the consequences of her plea and informed her

of the maximum statutory penalties and the essential elements of the offense.   The

Magistrate Judge also admonished the defendant regarding the Sentencing Guidelines,

how the Guideline sentencing process worked, and that the Court was not bound by the

stipulated facts and may take other facts into consideration.   The Magistrate Judge also

warned the defendant that, despite her discussion with her attorney, no one could predict

with certainty the outcome of the Court' s consideration of the Guidelines in her case.

The defendant pled guilty with full knowledge of the potential consequences.   One can

only reasonably infer that she only objects now because her potential sentence is higher

than she had hoped, even though she makes a wholly unsupported claim of innocence.

  (1) <u>*Carr* factor one: The defendant asserts innocence</u>.

  The defendant now does assert factual innocence.   (Motion, p. 1.).   However, a

mere claim of innocence is far from sufficient to warrant the granting of a motion to

withdraw a guilty plea.   *See Carr*, 740 F2d. at 344 (stating that "[f]irst, although the defendant has asserted his innocence, this claim alone is far from being sufficient to overturn denial of a withdrawal motion.   Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right.")   In her factual resume, the defendant admitted to having both knowledge *and* intent to possess methamphetamine with the intent to distribute it; she also admitted that investigators found overwhelming evidence of her guilt at her home.   (Docket No. 23.)   Later, she admitted to the truth of the same to the Magistrate Judge.   Moreover, the defendant's inability to identify any specific evidence to substantiate her bare claim of innocence is a compelling reason to completely discount it, especially in light of the overwhelming evidence of her guilt.   *United States v. Estrella*, 601 Fed. Appx. 310, 311 (5th Cir. 2015).   Primarily, the defendant remonstrates that she was mailing "electronics" and "gadgets" for her son.   Nothing but her own incredible statements support this claim.

As indicated above, the defendant was involved in a conspiracy to distribute narcotics through the U.S. mail.   (PSR ¶¶ 11-26.)   Incidentally, as it turned out, she was caught red-handed, so to speak, with narcotics and cash dispersed and stashed throughout her house.   (PSR ¶ 23.)   The defendant and her son effectuated the conspiracy countless times, mailing over 8,000 parcels.   (PSR ¶ 12.)   Of the fourteen parcels seized by law enforcement officers, every single one contained narcotics.   (PSR ¶ 14.)   The defendant's one-bedroom apartment was littered with drugs and

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  8**

paraphernalia, including a postal scale, baggies, packaging and mailing materials, and cash in several locations.   (PSR ¶¶ 23-24.)   In subsequent searches of the defendant's cellular telephone, investigators found conversations about drug distribution between the defendant and her coconspirator son, including explicit references to drugs and obvious distributable quantities.   (PSR ¶ 26.)   Of particular note, the defendant did not dispute any of these factual allegations when she filed her objections to the PSR.   Further, given the land-office business the defendant and her son were conducting through the mail, and her claims now that she was selling legitimate merchandise, the PSR does not reflect that any inventory of "gadgets" was found in the defendant's apartment at the time of the search which would corroborate her claims.

The Supreme Court has held that such "[s]olemn declarations in open court" are afforded a "strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   Moreover, on January 19, 2021, the defendant was interviewed in the presence of her attorney by a U.S. Probation Officer, during which she admitted to mailing drugs, but attempted to minimize her conduct; the Court should note that glaringly absent from her discussion of the drugs involved in the conspiracy is any mention of methamphetamine – which was the primary drug she and her son distributed, substantial quantities of which were also found in her apartment.   (PSR ¶ 32.)   Accordingly, the "maintaining innocence" factor weighs against the defendant.

       (2)    <u>*Carr* factor two: Withdrawing the guilty plea would not significantly prejudice the government, but this factor is not determinative.</u>

The government would not be significantly prejudiced by allowing the defendant to withdraw her guilty plea.   This finding is not determinative, because the other factors weigh overwhelmingly against the defendant. *See Carr*, 740 F.2d at 345.

(3)   <u>*Carr* factor three: The defendant delayed filing her Motion.</u>

The defendant's delay in moving to withdraw her guilty plea was excessive and this factor weighs against withdrawal.   The defendant waited over four months from her guilty plea before she filed the Motion, nigh unto sentencing and final judgment being entered in her case.   This is excessive.   The Fifth Circuit has held that less lengthy delays were excessive.   *See, e.g.*, *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (6-week delay weighed significantly against defendant); *United States v. Rinard*, 956 F.2d 85, 88-89 (5th Cir. 1992) (69-day delay weighed against defendant); *Carr*, 740 F.2d at 345 (motion delayed 22 days was "not promptly filed").   "[T]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Id.* at 344.

The delay in this case indicates that the defendant did not have a "substantial reason" for changing her guilty plea, but rather that she simply changed her mind about pleading guilty.   The legitimate purpose of allowing a defendant to withdraw her plea— to allow him to "undo a plea that was unknowingly made at the time it was entered"—is absent here.   *See Carr*, 740 F.2d at 345.   Indeed, the purpose of the rule "is *not* to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then

obtain a withdrawal if she believes that she made a bad choice in pleading guilty." *Id.* (emphasis added).   But that is exactly what happened in this case.

(4)     *Carr* factors four and seven: Withdrawal would inconvenience the Court and waste judicial resources.

As detailed above, the Court has already expended judicial resources on the defendant's guilty plea and preparation for sentencing.

(5)     *Carr* factor five: the defendant received "close assistance of counsel."

In her Motion, the defendant admits to having been advised to plead guilty and cooperate with the government.   (Motion, p. 4.)   That was excellent advice.   Further, she admitted in her signed plea agreement that she had carefully reviewed the plea agreement with her attorney, was satisfied with him, and willingly chose to enter the plea agreement.   (Docket No. 24.)   The defendant cannot now in good faith claim actual innocence given her multiple admissions to having the close assistance of counsel in pleading guilty.

(6)     *Carr* factor six:   The defendant's plea was knowing and voluntary.

Finally, as detailed above, the defendant's plea was knowing and voluntary. Nevertheless, the defendant claims that her plea was not a knowing and voluntary one because she made her plea "believe[ing] that if she shipped narcotics on behalf of her son, even unknowingly, she could be liable for a crime."   (Motion, p. 4.)   This is nonsense.   She had assistance of counsel, and was carefully admonished by the

Magistrate Judge of the pending charge, the essential elements, and the consequences of pleading guilty.    The Magistrate Judge reviewed the factual resume and the plea agreement with the defendant at arraignment and received assurances that before she signed the documents, she had read them, discussed them with her attorney, and understood what the documents said and what they meant.    The Magistrate Judge also cautioned the defendant, among other warnings, that he should not depend or rely upon any statement or promise by anyone as to the penalty that might by assessed against her. The Magistrate Judge also informed the defendant that the Probation Office would conduct a thorough and independent investigation, and would issue a report detailing its findings.    The defendant assured the Court that she understood.    The defendant's plea was knowing and voluntary.

[*continued on next page*]

## Conclusion

In sum, the Motion is bereft of justification for allowing the defendant to withdraw her guilty plea.   Accordingly, the government respectfully requests that the Court deny the Motion.

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

 /s/ *Robert J. Boudreau*
ROBERT J. BOUDREAU
Assistant United States Attorney
New York State Bar No. 4686507
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5200
Facsimile:  817.978.3094

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2021, I electronically filed the foregoing Government's Response with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.   The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means: Franklyn Mickelsen.

/s/ *Robert J. Boudreau*
ROBERT J. BOUDREAU
Assistant United States Attorney

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  13**